## McCALLUM v. DODGE.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

LANDLORD AND TENANT (§ 165*)—DEFECTIVE PREMISES—LIABILITY.
　　An owner of an eight-story building leased the store and basement, and agreed to furnish "elevator service in common with other tenants." An elevator of use only to the lessee of that part of the building was included in the lease. The lessee sublet the basement, including the elevator adapted only to the use of the lessee of the basement. The sublessee used the elevator and assumed the duty of keeping it in repair. *Held*, that the owner parted with control of the elevator to the lessee, and was not liable for injuries caused by defects in the elevator; the quoted phrase applying excusively to the freight and passenger elevators provided for the common use of all the tenants.

　　[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630-641; Dec. Dig. § 165.*]

Appeal from Trial Term, New York County.

Action by Patrick McCallum against Mary C. Dodge. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Edward P. Mowton, for appellant.
Frederick B. Maerkle, for respondent.

SCOTT, J. Defendant appeals from a judgment for damages for personal injuries entered upon a verdict, and from the order denying her motion for a new trial. The defendant is the owner of an office building, eight or more stories in height, in the city of New York. On March 14, 1905, she leased the store and basement to the Long Island Railroad Company for a term of years. On May 6, 1905, the railroad company subleased the basement for a term of years to the firm of Boutelle & Son, dealers in oilcloth and linoleum. There was what is known as a "sidewalk elevator," running from the basement to the street surface. The elevator was appurtenant to the use of the basement, was adapted only to the use of the tenant of the basement, and was used solely by such tenant. In fact, it could have been of no use to any other occupant of the building. The plaintiff was shipping clerk for Boutelle & Son, the tenants of the basement, and, as he himself testified, nobody used the elevator except Boutelle & Son, and nobody ran it except plaintiff himself. Occasionally the engineer of the building used the elevator to carry up ashes; but this was only occasionally, and then by the express permission of plaintiff, whose testimony on this point was:

"They were allowed to bring them [the ash cans] up on the passenger elevator, but I was kind enough to let them take them up on my elevator once in a while."

There is no evidence that defendant, or any agent of hers, knew of this occasional use of the elevator. On the day of the accident plaintiff was riding up on this elevator with a load consisting of three rolls of linoleum. When part way up a triangular link broke, letting down one side of the elevator, precipitating plaintiff, and the rolls of linoleum to the bottom of the shaft, resulting in the injuries for which he sues.

Although the elevator is not specifically mentioned in defendant's lease to the railroad company, it is so obviously appurtenant to the basement, and of use only to the tenant of that part of the building, that it was clearly included in the lease, and, later, in the lease to Boutelle & Son. That the parties so considered it is evidenced by the fact that the tenant assumed the duty of keeping it in repair. In September, 1905, the then tenants of the basement, Boutelle & Son, employed an experienced elevator builder to make repairs upon this elevator, and it appears to have been this builder who furnished the link which afterwards gave way. It is entirely clear that defendant parted with control of this elevator to her tenant, and that this tenant or its subtenant assumed and exercised sole control over it. A finding to the contrary would be clearly against the weight of the evidence. Under these circumstances no responsibility rests upon defendant for the failure of the elevator, for there is no proof or suggestion that it was not in good order when she made the lease, nor is

any subsequent notice shown to have been given to her that it has fallen out of repair, although such notice, if it had been given, would probably not have affected her liability.

The plaintiff lays great stress, and apparently his chief reliance, upon a clause in the lease to the railroad company, "that the within rent includes steam heat and elevator service during regular business hours in common with other tenants," and refers us to the Appellate Term case of Wagner v. Welling, 84 N. Y. Supp. 979, wherein, under somewhat similar circumstances to those here present, a landlord was held to be liable for a defective sidewalk elevator. There is, however, a significant difference between that case and this. In that case the undertaking of the landlord was "to furnish steam heat and elevator service," which was deemed to cover all the elevators, including the one running from the basement to the sidewalk. In the present case the landlord undertakes to furnish elevator service "in common with other tenants," which applies clearly, and as we think exclusively, to the freight and passenger elevators provided for the common use of all the tenants in the building. The case of Wagner v. Welling, although entitled to great respect, is not controlling upon us, and it is not necessary to determine now whether or not, in a precisely similar case, we should be disposed to follow it. For the present it is sufficient to point out the difference in the facts. We are unable to see, in any view of the case as presented on this appeal, how the defendant can legally be held responsible for the injuries to the plaintiff.

The judgment and order appealed from must therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.